Filed 7/21/26  Martinez v. Franco CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| AMBER MARTINEZ, | B342203 |
| Appellant. | Los Angeles County |
| v. | Super. Ct. No. |
| | 24STRO02140 |
| LEON DAVID FRANCO, | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura Cohen, Judge Pro Tempore.  Affirmed.

Amber Martinez, in pro. per., for Plaintiff and Appellant.

No appearance for Respondent.

Amber Martinez appeals from an order denying her request for a domestic violence restraining order (DVRO) against Leon David Franco.  Martinez argues the trial court erroneously rejected her factual claims about Franco's alleged abuse.  She further contends the trial court erroneously admitted evidence Franco had not served on her and that her counsel was ineffective.  We reject these arguments and affirm.

## BACKGROUND

### I. Allegations in Martinez's Request for a DVRO

In March 2024, Martinez filed a request for a DVRO against Franco, her former romantic partner.  Martinez wrote that Franco "assaulted" her "many times" and described multiple alleged incidents.  We summarize the details of her allegations here.

According to Martinez, Franco pointed a gun at her on one occasion.  She yelled at him to stop.  Franco laughed at her and continued to point the gun at her until she yelled at him again.  Another time, Franco bit her on the arm, leaving a red bite mark and causing swelling.  He also once shoved Martinez against his refrigerator, then pushed her outside onto the ground and locked her out.

Martinez further stated that in January 2024, during a meal at a restaurant with two friends, he screamed at her and called her a "bitch."  After the meal, Franco hit her in the face with a couch cushion two or three times.  In February 2024, while they were in a movie theater, Franco repeatedly slapped her thigh.  She got up to leave, and he grabbed her arm before letting her go.

Martinez asserted the most recent incident occurred at Franco's home in March 2024. Franco hit her in the face several times with a weighted pillow. She cried and yelled at him. Franco began filming her while she wore only a bathrobe. He laughed at her, demanded sexual favors, then told her to make him breakfast. Martinez said she wanted to leave, but Franco refused to move his truck, which was blocking her car. He only moved the truck when Martinez said she was calling the police.

Martinez left and went to the emergency room. Her eye was swollen and she had an abrasion on her cornea. Medical staff contacted the police, who issued an emergency protective order for Martinez. She gathered and organized her evidence, then filed her DVRO request.

## II. Initial Proceedings and Franco's Written Response

Both parties appeared at the initial hearing on Martinez's DVRO request. The court continued the hearing to May 9, 2024, and ordered the parties to "exchange all evidence prior to the next hearing" and to file witness and exhibit lists by May 2.

On May 3, Franco filed a response to Martinez's request. He filed no proof of service of his response. In it, Franco asserted Martinez fabricated her claims of domestic violence. He wrote he does not own a gun and, though he owns a "toy gun," he never pointed it at Martinez. He also stated a restraining order was unnecessary because he had no interest in contacting Martinez again.

## III. Evidentiary Hearing

At the evidentiary hearing, the court began by asking if Martinez's counsel had met and conferred with Franco. Her attorney stated they had done so, he "saw [Franco's] response,"

and was ready to proceed. The court told the parties to "exchange your evidence" while it heard unrelated matters.

Upon resuming the hearing, the court admitted into evidence both Martinez's request for DVRO and Franco's written response. The court questioned Martinez about the most recent abuse. She recounted that Franco hit her with a pillow, then filmed her (wearing only a bathrobe) without her consent. Martinez described her injuries and identified them in photos she took. She also testified about other incidents included in her request: when Franco threw her against a refrigerator, slapped her thigh, and pointed a gun at her. Martinez further testified that Franco violated the temporary restraining order twice. On April 20, he drove to her home, and on May 4, he followed her on Instagram. Martinez's counsel also questioned her about the most recent alleged abuse.

The court asked Martinez about her medical expenses. In addition to the records attached to her DVRO request, Martinez offered further documentation supporting her expenses. The court stated they were unnecessary and that the documents may be hearsay. Martinez's counsel then questioned her further about the incident on April 20. She testified she saw Franco in his car "try and sit outside" her home.

Franco did not cross-examine Martinez. In his testimony, he denied following her on Instagram. He said he did not try to see her after the temporary restraining order took effect, though he conceded she may have seen him on a street near her home as he drove elsewhere. Franco said that over the course of their relationship, he tried to break up with Martinez several times, but she "would threaten" to "get [him] in trouble."

Regarding the most recent alleged incident, Franco denied hitting Martinez with a pillow. He testified they had an argument, then Martinez threatened to "get [him] in trouble." He began filming her to protect himself from false accusations. Franco offered to play the video in court. The court asked Franco if he had shown it to Martinez's counsel, and he acknowledged he had not. Martinez's counsel objected. The court partially overruled the objection but did not watch the video.

Franco continued testifying about the most recent incident. According to Franco, after he stopped filming Martinez, he left the room. About 15 minutes later, Martinez told him she took photos of his truck blocking her car. Franco testified he was not trying to block her; they use tandem parking in his driveway, so one car naturally blocks the other. He told Martinez he was ready to move his truck.

Franco then began filming Martinez again. She claimed he was trying to stop her from leaving. Franco denied that and said he wanted her to leave. Martinez entered the bathroom, but Franco told her he wanted her to leave now. He moved his truck, and she left a few minutes later.

Before watching the second video (which is not in the record on appeal), the court questioned Franco about it. He stated the video shows Martinez was not injured. Though she said she was afraid of him, she "was coming towards" him. The court watched the video and found it corroborated Franco's testimony. The court stated that in it, Franco "was encouraging her to leave" and "said he was happy for her to leave, and she did not look fearful."

The court continued questioning Franco. It asked Franco to respond to Martinez's claim that he slapped her on the thigh,

5

causing a red welt. He stated he had only "grabbed her leg" during an intense scene in a movie and was not trying to hurt her. Finally, the court asked Franco if the relationship was over and if he had any interest in contacting Martinez. He said the relationship was over and he had no interest in contacting her, and that he "wish[ed] her the best," did not "wish to disparage her in any way," but had to defend himself from false accusations.

Martinez's counsel questioned both Franco and Martinez about the second video. Franco reiterated that in the video, Martinez only pretended to be scared. On redirect, Martinez testified that after Franco stopped filming, he stood in her way to stop her from leaving and refused to move his truck.

## IV. The Court's Ruling

The court denied Martinez's request for a DVRO against Franco. It reasoned: "Based on the evidence before me, the testimony here today, and my credibility determination, and the totality of the circumstances. I find the respondent credible here today. I do not find the petitioner very credible." The court therefore found Martinez had "not met her burden" of proving Franco had abused her.

Martinez moved to set aside or reconsider the order. Before the court ruled on the motion, Martinez timely appealed the order denying her DVRO request. The court ultimately denied her motion to set aside or reconsider its order.

## DISCUSSION

## I. Legal Standard

Under the Domestic Violence Prevention Act (DVPA), a court may issue a DVRO " ' "to restrain any person for the purpose of preventing a recurrence of domestic violence and

6

ensuring a period of separation of the persons involved" ' upon 'reasonable proof of a past act or acts of abuse.' " (*Parris J. v. Christopher U.* (2023) 96 Cal.App.5th 108, 115.)  The petitioner must prove past abuse by a preponderance of the evidence.  (*Id.* at p. 116.)  Abuse includes intentionally injuring a partner (Fam. Code, § 6203, subd. (a)(1)) or making a partner fear imminent injury (*id.*, subd. (a)(3)).  The court must "consider the totality of the circumstances" when ruling on a DVRO request.  (Fam. Code, § 6301, subd. (d).)

On appeal, we review an order granting or denying a DVRO for abuse of discretion.  (*X.K. v. M.C.* (2025) 112 Cal.App.5th 1287, 1295.)  Where, as here, the trial court found the person requesting a DVRO did not meet his or her burden of proof,  we reverse the decision below only if " ' "the evidence compels a finding in favor of the appellant as a matter of law." ' " (*Jan F. v. Natalie F.* (2023) 96 Cal.App.5th 583, 593.)  " 'Specifically, we ask "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' [Citation.]  This is 'an onerous standard' [citation] and one that is 'almost impossible' for a losing [party] to meet." (*Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 651.)

## II. The Trial Court Did Not Err in Denying the DVRO

The trial court's denial of Martinez's DVRO request was not an abuse of discretion because Martinez's evidence did not compel a finding in her favor as a matter of law.  Though she submitted documentary evidence of injuries, only her written declaration and oral testimony served as evidence that Franco caused those injuries.  Even before considering Franco's

testimony to the contrary, Martinez's evidence did not have such character and weight as to require finding in her favor.

Moreover, Franco contradicted Martinez's evidence. In his written response and oral testimony, Franco stated Martinez fabricated her allegations. He denied Martinez's specific allegations of abuse, asserted he never threatened or harmed her, and denied violating the temporary restraining order. After considering the evidence, the court found Franco more credible than Martinez. On appeal, we do not "second-guess such credibility determinations." (*In re S.G.* (2021) 71 Cal.App.5th 654, 672.)

It is true Martinez presented evidence that would have supported a finding that Franco abused her. But as the trier of fact, the trial court was free to reject that evidence based on a finding that Martinez was not credible. That is exactly what the trial court did here. Under the applicable standard of review, we "draw all reasonable inferences to affirm the trial court." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581.) That the evidence may have supported a different outcome does not permit us to reverse the decision below.

Based on the record before it, the trial court acted within its discretion in denying Martinez's request for a DVRO.

## III. Service of Franco's Response and Evidence

Martinez contends the court erroneously considered evidence, including Franco's written response, that he did not serve on her before the hearing. At the hearing, however, Martinez's counsel acknowledged receiving Franco's response. When the court admitted Franco's response into evidence, Martinez's counsel did not object. Further, Martinez did not object to video evidence offered by Franco on the grounds that it

8

was untimely served.  Martinez therefore forfeited any claim of error based on Franco not serving or disclosing his evidence before the hearing.  (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 342 [failing to raise a point below results in forfeiture on appeal]; *Vascos Excavation Group LLC v. Gold* (2022) 87 Cal.App.5th 842, 856 [same].)

We also reject this argument on the merits.  The applicable statute requires the petitioner to "personally serve[ ]" the request for DVRO on respondent "at least five days before the hearing." (Fam. Code, § 243, subd. (a).)  It further provides that "the respondent may file a response that explains or denies the allegations in the petition." (*Id.*, subd. (c).)  The statute does not impose a deadline for the respondent to serve his or her response.

Indeed, nothing in the DVPA expressly provides when a party must serve the other party with evidence he or she plans on using at the evidentiary hearing.  On the day of the evidentiary hearing, the trial court required the parties to exchange evidence shortly before the hearing commenced.  This common practice is consistent with the DVPA and due process.

Martinez identifies no authority prohibiting the court from considering evidence respondent did not serve before the hearing date.  She instead refers to various inapplicable or nonexistent rules on service and filing deadlines.  She cites California Rules of Court, rule 3.510, which only applies to complex coordination proceedings.  (See *Gordon's Cabinet Shop v. State Comp. Ins. Fund* (1999) 74 Cal.App.4th 33, 39.)  Martinez also refers to unspecified California "Court Procedural Rules" and "Federal Procedural Codes."  With no proper citation to legal authority, Martinez forfeited any contention based on these unidentified

9

rules or statutes. (See *Rios v. Singh* (2021) 65 Cal.App.5th 871, 881.)

Martinez also argues the court ordered Franco to file his response by May 2, 2024. The court, however, only ordered the parties to jointly "[f]ile and serve a witness list and an exhibit list by" that date. This order did not apply to Franco's response to the petition.

Furthermore, assuming the court erroneously admitted Franco's written response and video evidence, any error was harmless. The trial court properly admitted Franco's oral testimony at the evidentiary hearing. Martinez does not argue otherwise. Franco denied abusing Martinez and denied violating the temporary restraining order. The trial court found this testimony credible. Thus, even with no other evidence, the trial court was not compelled to find in Martinez's favor as a matter of law.

**IV. Ineffective Assistance of Counsel**

Lastly, Martinez contends her counsel provided ineffective assistance. Ineffective assistance of counsel is grounds for relief only when one has the right to counsel, such as criminal defendants or parents facing termination of parental rights. (*In re A.R.* (2021) 11 Cal.5th 234, 247–248; *In re Marriage of Tara & Robert D.* (2024) 99 Cal.App.5th 871, 887.) Martinez provides no authority that parties in DVPA proceedings have a right to counsel or that ineffective assistance of counsel in such proceedings warrants relief on appeal. Any alleged deficiency of her counsel is not grounds for reversal.

10

## DISPOSITION

The order denying Amber Martinez's request for a domestic violence restraining order is affirmed.  Because Leon David Franco made no appearance on appeal, neither party shall recover costs.  (See *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 121.)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

TAMZARIAN, J.

We concur:

MORI, Acting P. J.

COGLIATI, J.*

---

\*      Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.